UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
WING CHAN and MING ZHANG,
individually and on behalf of all other
employees similarly situated,

                        Plaintiffs,

    -against-

XIFU FOOD, INC., d/b/a Xifu Food;
PENG XIANG; and HONG JI, a/k/a
"Hellen,"

                       Defendants.
--------------------------------------------------X

REPORT AND
RECOMMENDATION

18 CV 5445 (ARR)(RML)

LEVY, United States Magistrate Judge:

        By order dated July 11, 2019, the Honorable Allyne R. Ross, United States

District Judge, referred plaintiffs' then-forthcoming second motion for default judgment to me

for report and recommendation.  I conducted a hearing on October 17, 2019, after which

plaintiffs filed a supplemental submission.  For the reasons stated below, I respectfully

recommend that plaintiffs' motion be granted with respect to defendant Hong Ji, but denied

with respect to defendants Peng Xiang and Xifu Food, Inc.

## BACKGROUND AND FACTS

        Plaintiffs Wing Chan ("Chan") and Ming Zhang ("Zhang") ("plaintiffs")

commenced this wage and hour action on September 27, 2018 against defendants Xifu Food,

Inc. ("Xifu"), Peng Xiang ("Xiang"), and Hong Ji ("Ji") ("defendants"), asserting claims under

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and the New York Labor

Law ("NYLL").  (See Complaint, dated Sept. 27, 2018 ("Compl."), Dkt. No. 1.)  Plaintiffs first

moved for default judgment on February 8, 2019.  (See Motion for Default Judgment, dated

Feb. 8, 2019, Dkt. No. 11.)  After Judge Ross referred that motion to me, I scheduled an inquest

hearing for February 25, 2019.  (See Scheduling Order, dated Feb. 12, 2019.)  I subsequently

adjourned the inquest hearing in light of plaintiffs' intention to amend their complaint.  (See

Order, dated Feb. 22, 2019.)

       Plaintiffs filed their amended complaint on March 19, 2019.  (See Amended

Complaint, dated Mar. 19, 2020 ("Am. Compl."), Dkt. No. 14.)  On July 10, 2019, after

defendants failed to answer or move with respect to the amended complaint, the Clerk of the

Court noted their defaults and Judge Ross referred any forthcoming motion for default judgment

to me.  (See Clerk's Entry of Default, dated July 10, 2019, Dkt. No. 31; Order Referring

Forthcoming Motion, dated July 11, 2019.)  On September 13, 2019, plaintiffs moved for default

judgment on the amended complaint.  (See Motion for Default Judgment, dated Sept. 13, 2019,

Dkt. No. 32.)  I held an inquest hearing on October 17, 2019, at which I heard testimony from

both plaintiffs through a Mandarin Chinese interpreter.  (See Transcript of Hearing, dated Oct.

17, 2019 ("Tr."), Dkt. No. 35.)

       Xifu is alleged to be a domestic business corporation with its principal place of

business at 318 Livingston Street in Brooklyn, New York.  (Am. Compl. at 3, ¶ 1.)  Ji and

Xiang are each alleged to be owners, chief executive officers, and/or managing agents of Xifu.

(Id. at 4-5, ¶¶ 6, 9.)  At the inquest, plaintiffs each testified they worked for defendants from

February 5, 2015 until July 15, 2016.  (Tr. at 5:6-11; 11:11-13.)  Chan worked as a fry wok

cook and Zhang worked as a baker.  (Id. at 5:3-5, 11:8-10; see also Affidavit of Wing Chan,

sworn to Sept. 12, 2019, Dkt. No. 32-3, ¶ 2; Affidavit of Ming Zhang, sworn to Sept. 12, 2019,

Dkt. No. 32-4, ¶ 2.)  They were each paid a set monthly salary, $1800 for Chan and $2,400 for

Zhang, regardless of the number of hours they worked.  (Tr. at 5:21-24, 11:18-12:3.)

Plaintiffs assert claims under the FLSA and NYLL for unpaid overtime wages. (See Am. Compl. ¶¶ 49-60.)  They additionally assert claims under the NYLL for unpaid spread of hours wages and failure to provide proper wage notices and wage statements.  (Id. ¶¶ 61-73.) They seek back pay, liquidated damages, pre- and post-judgment interest, attorney's fees, and costs.  (See Plaintiffs' Memorandum of Law, dated Sept. 13, 2019 ("Pl.'s Mem.), Dkt. No. 32-9, at 15; Damages Calculations, Dkt. No. 32-7.)

## DISCUSSION

### A.  Service of Process

"A court may not properly enter a default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." U.S. Flour Corp. v. Certified Bakery, Inc., No. 10 CV 2522, 2012 WL 728227, at *4 (E.D.N.Y. Mar. 6, 2012) (quoting Copelco Capital, Inc. v. Gen. Counsel of Bolivia, 940 F. Supp. 93, 94 (S.D.N.Y. 1996)).  Even after entry of default, the court retains discretion over whether to grant a final default judgment and "may appropriately review the adequacy of service." Avanti Enters., Inc. v. A & T Produce, No. 09 CV 1185, 2010 WL 3924771, at *1 (E.D.N.Y. July 21, 2010), report and recommendation adopted, 2010 WL 3909243 (E.D.N.Y. Sept. 30, 2010).

Rule 4 of the Federal Rules of Civil Procedure provides that a corporation may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made" or by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and-- if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant." See FED. R. CIV. P. 4(e)(1); 4(h)(1)(B).  The New York Civil Practice

Law and Rules similarly permit a corporation to be served by delivering the summons to "an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service."  N.Y. C.P.L.R. § 311(a)(1).

Although a process server "may rely upon [a] corporation's employees to identify the individuals authorized to accept service," such reliance must be reasonable.  Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc., 301 F.3d 54, 57 (2d Cir. 2002).  "A process server's reliance has been found unreasonable when he made no attempt to ascertain the title or corporate position of the individual who accepted the papers or even to inquire whether the individual was actually an employee of the defendant corporation."  Prescription Containers, Inc. v. Cabiles, No. 12 CV 4805, 2014 WL 1236919, at *6 (E.D.N.Y. Feb. 14, 2014) (internal quotation marks and citation omitted), report and recommendation adopted, 2014 WL 1237098 (E.D.N.Y. Mar. 25, 2014).  Indeed, multiple courts in this district have found service upon a corporation to be insufficient where the affidavit of service states in a conclusory manner that the individual who accepted service was authorized to do so without explaining how the process server knew that to be so.  See, e.g., Valle v. GDT Enters., 19 CV 797, 2020 WL 435295, at *3-4 (E.D.N.Y. Jan. 28, 2020); Shengjian Zhuang v. Hui's Garden Rest., Inc., No. 17 CV 7547, 2019 WL 1578193, at *1-2 (E.D.N.Y. Feb. 19, 2019); Trs. of Empire State Carpenter's Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. R. Baker & Sons All Indus. Servs., Inc., No. 13 CV 4590, 2014 WL 6606402, at *3-4 (E.D.N.Y. Aug. 4, 2014), report and recommendation adopted, 2014 WL 4536911 (E.D.N.Y. Sept. 11, 2014).

In this case, the process server left the summons and amended complaint with an individual named "Stacey," who refused to provide her last name.  (See Affidavit of Service of Mohamed Hussein, sworn to May 10, 2019, Dkt. No. 22.)  The affidavit of service states that the

4

process server "knew said individual to be a general agent of [Xifu]," without explaining how the process server knew this to be so.  (See id.)  This is insufficient to demonstrate proper service upon Xifu.  See, e.g., Shengjian Zhuang, 2019 WL 1578193, at *2 ("Here, the Summonses do not explain how the server knew that Jane Doe was authorized to accept service. This facial infirmity suggests service was not made to a person authorized to accept service.")  As "[i]t is not the duty of the Court to speculate as to whether a plaintiff has satisfied the procedural prerequisites for a default motion," Prescription Containers, 2014 WL 1236919, at *6 n.6, I respectfully recommend that plaintiffs' motion as to Xifu be denied without prejudice.

On the other hand, plaintiffs have established proper service on the individual defendants, Ji and Xiang.  Plaintiffs' process server delivered the summons and complaint to a person of suitable age and discretion at Ji and Xiang's actual place of business and followed up by mail in compliance with N.Y. C.P.L.R. § 308(2).  (See Affidavits of Service of Mohamed Hussein, sworn to May 10, 2019, Dkt. Nos. 23, 24); see also FED. R. CIV. P. 4(e)(1) (allowing for service upon an individual following the law of the forum state).  Accordingly, I will consider the claims against Ji and Xiang on the merits.

B.  Liability

A defendant's default is "deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Once a default judgment is entered, the court "is required to accept all of [the plaintiffs'] factual allegations as true and draw all reasonable inferences in [the plaintiffs'] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  The court must then "determine whether [the plaintiffs'] allegations establish [the defendants'] liability as a matter of law." Id.

Plaintiffs have sufficiently pleaded factual allegations that give rise to liability for unpaid overtime under the FLSA and the NYLL.  (See Am. Compl. ¶¶ 21-48.)  While they do not request minimum wage damages, their pleadings further give rise to liability for unpaid minimum wages under both statutes.  (See id.)  They have also sufficiently pleaded liability under the NYLL for unpaid spread of hours wages and failure to provide wage statements and wage notices.  (See id.)  The extent to which they can recover damages from the defaulting defendants based upon these violations depends on whether: (1) their claims were timely; (2) they are covered employees under the FLSA and the NYLL; and (3) Ji and Xiang were their employers under the FLSA and NYLL.

  1.  Timeliness

   For plaintiffs' claims to be timely under the FLSA, they must have arisen within the two years prior to the filing of the complaint, or—for willful violations—within the three years prior.  29 U.S.C. § 255(a).  Here, plaintiffs have pleaded willful violations of the Act (Am. Compl. ¶¶ 1-4, 19-20), and defendants have, by virtue of their default, waived the affirmative defense of statute of limitations.  See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 87 (E.D.N.Y. 2012) (citing Day v. McDonough, 547 U.S. 198, 202 (2006); Davis v. Bryan, 810 F.2d 42, 44 (2d Cir. 1987); Archie v. Grand Cent. P'ship, 997 F. Supp. 504, 536 (S.D.N.Y. 1998)).  Plaintiffs allege that they were employed by defendants from February 5, 2015 until July 15, 2016.  (Tr. at 5:6-11; 11:11-13.)  This action was commenced on September 27, 2018.  (See Compl.)  Therefore, those portions of plaintiffs' FLSA claims arising between February 5, 2015

and September 27, 2015 are untimely.  However, plaintiffs may recover for underpayment of wages during this period if their NYLL claims are timely.[1]

For plaintiffs' claims to be timely under the NYLL, they must have arisen within the six years prior to the filing of the complaint.  See N.Y. Lab. L. §§ 198(3); 663(3). Because plaintiffs allege that they were employed by defendants and that underpayment of wages, wage notice violations, and wage statement violations occurred after September 27, 2012, their claims under the NYLL are timely.

2.  Employee Coverage

Because the minimum wage and overtime provisions of the FLSA and the NYLL apply only to employees of covered employers, a plaintiff in a wage and hour action must show that he or she was defendants' employee, and that defendants were employers subject to the coverage of each statute.  For purposes of the FLSA, an employee is "any individual employed by an employer," meaning any individual whom an employer "suffer[s] or permit[s] to work." 29 U.S.C. §§ 203(e)(1); (g).  Absent a statutory exemption, such individuals are protected by the FLSA, so long as they work for a covered employer.  An employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  Person is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. § 203(a).  In addition, for employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce *or* that their work as employees regularly involved them in interstate commerce.  See 29 U.S.C. § 207(a).

---

[1] Plaintiffs may not receive "double recovery" of unpaid wages under both the FLSA and the NYLL.  Hernandez v. Jrpac Inc., 14 CV 4176, 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016).

Here, plaintiffs have adequately pleaded that they were restaurant employees to whom no statutory exemption applies.  (See Am. Compl. ¶¶ 21-48.)  They have further alleged that the restaurant for which they worked, Xifu, had gross receipts of greater than $500,000 per year during the relevant period, and that its employees were engaged in interstate commerce because they purchased and handled goods that moved in interstate commerce.  (See id. at 4 ¶4.)  Thus, they allege that they are covered employees under the FLSA.  This allegation is, on its face, conclusory, insofar as it restates the statutory definition of enterprise coverage without providing additional facts.  The only supporting factual allegation for this is that Xifu's employees "worked on goods moving in commerce such as food flour, vegetables, as well as other food ingredients and food supplies."  (Id.)

Multiple courts in this district have held that similarly conclusory allegations of enterprise coverage may be accepted on a motion for default judgment where it may be inferred from the type of business enterprise that it was engaged in interstate commerce.  See, e.g., Remache v. Mac Hudson Grp., No. 14 CV 3118, 2018 WL 4573072, at *4 (E.D.N.Y. Sept. 7, 2018), report and recommendation adopted, 2018 WL 4568860 (E.D.N.Y. Sept. 24, 2018) (holding that "the enterprise that employed plaintiffs—i.e. a construction business—is a type that is typically involved in interstate commerce" and that plaintiffs had therefore sufficiently established that they were covered employees under the FLSA); Huerta v. Victoria Bakery, No. 10 CV 4754, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012) ("[T]he original complaint . . . provides a sufficient basis . . . for inferring the requisite interstate commerce connection under the sensible approach adopted by other judges in this district. The complaint alleges that plaintiffs . . . were employed as bread makers in a Brooklyn-based bakery with over half a million dollars in annual sales. It is inconceivable that some of the bread-making materials used by plaintiffs did not originate out of state or that the bakery did not sell its products outside the

State of New York."); Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 121

(E.D.N.Y. 2011) ("Because even local business activities fall within the reach of the FLSA when

an enterprise employs workers who handle goods or materials that have moved or been produced

in interstate commerce, the test is met if Plaintiffs merely handled supplies or equipment that

originated out-of-state . . . . The Court finds it logical to infer here that the cleaning supplies

utilized by the Plaintiffs originated outside of New York. Plaintiffs' Complaint, therefore, fairly

alleges that the Defendants are an 'enterprise engaged in commerce.' Consequently, the Court

finds that Plaintiffs are covered by the FLSA.") (internal citations and quotation marks omitted).[2]

I agree with courts that have adopted this approach, and therefore find that the enterprise that

employed plaintiffs was involved in interstate commerce.

     3.  Employer Status of Ji and Xiang

       To determine whether an individual qualifies as an "employer" under both the

FLSA and NYLL,[3] the relevant inquiry is "whether the alleged employer possessed the power to

control the workers in question, with an eye to the 'economic reality' presented by the facts of

each case." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (internal citations

omitted).  When examining the "economic reality" of a particular situation, courts will evaluate

---

[2] But see Perez v. Queens Boro Yang Cleaner, Inc., No. 14 CV 7310, 2016 WL 1359218, at *4
(E.D.N.Y. Mar. 17, 2016) ("While some judges in this district disagree, and have granted
default judgments notwithstanding a similar lack of specificity in other cases, I conclude that
requiring non-conclusory allegations is more consonant with applicable case law concerning
pleading requirements, and that it does not frustrate the FLSA's remedial purpose to require a
plaintiff seeking the statute's protection to explain in her pleading just what it is about her
employer's business that brings it within the law's ambit.") (footnote omitted).

[3] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with
the definition used by the FLSA." Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253,
308 n.21 (S.D.N.Y. 2011); see also Oaxaca v. Hudson Side Cafe Inc., No. 13 CV 2698, 2018
WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F.
Supp. 3d 19, 37 (E.D.N.Y. 2015).

various factors, none of which, individually, is dispositive.  Id.  These factors include "whether

the alleged employer (1) had the power to hire and fire the employees, (2) supervised and

controlled employee work schedules or conditions of employment, (3) determined the rate and

method of payment, and (4) maintained employment records."   Id. (quoting Carter v. Dutchess

Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).  An individual within a company that undisputedly

employs a worker may be held personally liable as an "employer" where he or she exercises

"operational control" over employees, meaning that "his or her role within the company, and the

decisions it entails, directly affect the nature or conditions of the employees' employment."

Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013).  At the same time, however,

> [e]vidence that an individual is an owner or officer of a company,
> or otherwise makes corporate decisions that have nothing to do
> with an employee's function, is insufficient to demonstrate
> "employer" status. Instead, to be an "employer," an individual
> defendant must possess control over a company's actual
> "operations" in a manner that relates to a plaintiff's employment.

Id. at 109.  "Ownership, or a stake in a company, is insufficient to establish that an individual is

an 'employer' without some involvement in the company's employment of the employees."  Id.

at 111.

In this case, plaintiffs have sufficiently pleaded facts to establish that Ji was their

employer.  Both allege that Ji, in her capacity as owner and manager of Xifu, interviewed and

hired them, set their work schedules, and determined how much they were paid.  (See Am.

Compl. ¶¶ 22-25, 36-39.)  These allegations were supported by plaintiffs' testimony at the

inquest.  (See Tr. at 5:25-6:6, 7:4-5, 12:4-7, 13:23-24.)

The allegations as to Xiang, on the other hand, are thinner.  While the amended

complaint alleges that Xiang owns stock in, makes business decisions regarding, and participates

in the "day-to-day operations" of Xifu (see Am. Compl. ¶¶ 9-10), it fails to specifically allege his

involvement in the types of employment matters that would establish his control over Xifu's employees.  At the inquest, Zhang testified that Xiang was Ji's boyfriend, but that Ji was her only "boss."  (See Tr. at 7:6-7, 10:12-14.)  While Chan described Xiang as "the boss of [the] store," he also testified that Xiang did not manage the store during the time that he worked there, was not involved in his hiring, did not set his work schedule, and was present at the store only "occasionally" to deliver ingredients and materials.  (See id. at 12:16-19, 13:1-4, 13:23-24, 14:15-24, 16:22-17:2)  He further testified that Xiang was not present when he first started working at Xifu and that Xiang's occasional appearances only commenced after he had been working there for a "long time."  (See id. at 13:1-4, 14:15-18.)  Both plaintiffs testified that Xiang appeared on the final day of their employment to "take charge" of the restaurant, and Chan testified that he "took over" after they had left.  (See id. at 9:17-10:2, 13:5-10, 17:2.)  On this record, I cannot find that Xiang exercised the requisite control to be considered plaintiffs' employer; therefore, I recommend that plaintiffs' motion be denied as to Xiang.[4]

C.  Damages

Once the court has determined liability, it "must conduct an inquiry to establish damages to a 'reasonable certainty.'"  Gunawan, 897 F. Supp. 2d at 83 (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."  Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).  "The burden is on the

---

[4] Following the inquest hearing, plaintiffs' counsel submitted supplemental documentation as to Xiang's ownership interest in Xifu.  (See Letter of Jiajing Fan, Esq., dated Oct. 24, 2019, Dkt. No. 34.)  Ultimately, however, ownership interest standing alone is insufficient to trigger liability where, as here, the record is devoid of any evidence that a defendant was involved in employment matters.  See Irizarry, 722 F.3d at 105-111.

plaintiff to establish [his or her] entitlement to recovery." Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009).

    1.  Hours Worked

      "As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiffs' recollection and estimates of hours worked are presumed to be correct.'" Gunawan, 897 F. Supp. 2d at 88 (alteration omitted) (quoting Zeng Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also Kim v. Kum Gang, Inc., No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted); Hart v. Rick's Cabaret Int'l, Inc., 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records."). Here, because defendants have defaulted and no employment records have been produced, the court will presume the accuracy of plaintiffs' recollection and estimates of hours worked, as stated in their testimony at the inquest.

      Zhang testified that she worked six days per week from 7:00 a.m. to 7:00 p.m. with no breaks. (Tr. at 5:14-20.) Therefore, she worked seventy-two hours per week. She further testified that she took four or five sick days over the course of her employment. (Id. at 8:16-21.) Accordingly, although her employment spanned seventy-five weeks, damages will be calculated based on 74.5 weeks.

Chan testified that he worked six days per week from 10:00 a.m. to 9:30 p.m. with no breaks, and that he took no time off.  (Id. at 11:14-12:1, 13:15-22.)  Therefore, he worked sixty-nine hours per week and is entitled to compensation for seventy-five weeks.

2. Minimum Wage Compensation[5]

Under both the FLSA and the NYLL, employees must be paid at least a minimum hourly wage for each hour that they work.  See 29 U.S.C. § 206(a); N.Y. Lab. Law § 652.  The federal minimum wage does not preempt the state minimum wage, see 29 U.S.C. § 218(a), and a plaintiff may recover under whichever statute provides the highest measure of damages. Wicaksono v. XYZ 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), report and recommendation adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011). Throughout plaintiffs' employment, the federal minimum wage was $7.25.  (See United States Department of Labor, Wage and Hour Division, *History of Federal Minimum Wage Rates Under the Fair Labor Standards Act, 1938 – 2009*, https://www.dol.gov/agencies/whd/minimum-

---

[5] While plaintiffs have not requested minimum wage damages, their pleadings and testimony clearly establish that they were paid less than the New York State minimum wage throughout their employment.  (See Second Am. Compl.  ¶¶ 27-28, 41-42; Tr. at 5:14-22, 11:14-21.)  While the damages awarded on a motion for default judgment generally should not exceed or differ in kind from what is demanded in the pleadings, Fed. R. Civ. P. 54(c); Silge v. Merz, 510 F.3d 157, 159-60 (2d Cir. 2007), "correction of counsel's miscalculation is permissible, even if the resulted award exceeds the amount plaintiff requested."  Xin Long Lin v. New Fresca Tortillas, Inc., No. 18 CV 3246, 2019 WL 3716199, at *5 n.12 (E.D.N.Y. May 1, 2019), report and recommendation adopted, 2019 WL 3714600 (E.D.N.Y. May 28, 2019); see also Med. Econ. Co. v. Healthexchange, Inc., No. 01 CV 11262, 2003 WL 22346391, at *2 (S.D.N.Y. Oct. 15, 2003) ("[Plaintiff] should not lose out because of such a calculation error by its counsel.")  In this case, the amended complaint does not set forth a specific amount of damages owing to unpaid wages, though it specifically requests damages for unpaid overtime without making a parallel request for unpaid minimum wages.  (See Am. Compl. at 15-17.)  However, by alleging that Zhang was paid $2,400 per month (or $600 per week) and Chan was paid $1,800 per month (or $450 per week), and that they worked seventy-two and sixty-nine hours per week, respectively, it clearly states a claim for unpaid minimum wages.  (See id. ¶¶ 27-28, 41-42.) Accordingly, I find that Ji was sufficiently placed on notice of the possibility that minimum wage damages could be awarded.

wage/history/chart).  From their date of hire on February 5, 2015 through December 30, 2015 the

New York State minimum wage was $8.75.  (See New York Department of Labor, *History of the*

*General Hourly Minimum Wage in New York State*, https://labor.ny.gov/stats/minimum_wage

.shtm).  From December 31, 2015 through their last day of employment on July 15, 2016, it was

$9.00.  (See id.)  Since, at all relevant times, the New York State minimum wage was higher than

the federal minimum wage, I will use that rate to calculate damages.

Zhang testified that she was paid a flat rate of $2400 per month, or $600 per

week, for the duration of her employment, and that she worked seventy-two hours per week.

(See Tr. at 5:14-22.)  This amounts to an hourly rate of $8.33, which is below the statutory

minimum.

From Zhang's date of hire on February 5, 2015 through December 30, 2015, the

New York State minimum wage was $8.75.  If Zhang had been paid the minimum wage during

this period, she would have earned $630 per week ($8.75 x 72).  Therefore, she was underpaid

by $30 per week.  As discussed above, Zhang testified that she took four or five sick days over

the course of her employment.  Since the court has no means of determining when those days

were taken, I have subtracted them from this period, since it is the longest and the most likely to

have included the sick days.  Therefore, compensating for 46.5 weeks, I find that she was

underpaid by $1,395 for this period.[6]

From December 31, 2015 through July 15, 2016, the New York State minimum

wage was $9.00.  If Zhang had been paid the minimum wage during this period, she would have

earned $648 per week ($9.00 x 72).  Therefore, she was underpaid by $48 per week, or $1,344

---

[6] In my subsequent calculations, I will continue to compensate for 46.5 weeks during this
period.

for this twenty-eight week period.  In sum, I find that Zhang is owed $2,739 in unpaid minimum wage compensation.

Chan testified that he was paid a flat rate of $1800 per month, or $450 per week, for the duration of his employment, and that he worked sixty-nine hours per week.  (See Tr. at 11:14-21).  This amounts to an hourly rate of $6.52, which is below the statutory minimum.

From Chan's date of hire on February 5, 2015 through December 30, 2015, the New York State minimum wage was $8.75.  If Chan had been paid the minimum wage during this period, he would have earned $603.75 per week ($8.75 x 69).  Therefore, I find that he was underpaid by $153.75 per week, or $7,226.25 for this forty-seven week period.

From December 31, 2015 through July 15, 2016, the New York State minimum wage was $9.00.  If Chan had been paid the minimum wage during this period, he would have earned $621 per week ($9.00 x 69).  Therefore, he was underpaid by $171 per week, or $4,788 for this twenty-eight week period.  In sum, I find that Chan is owed $12,014.25 in unpaid minimum wage compensation.

3. Overtime Compensation

Plaintiffs are each entitled to overtime compensation under both the FLSA and NYLL at the rate of one and one-half times their regular rate of pay for the hours they worked in excess of forty during a workweek.  See 29 U.S.C. § 207(a)(1); N.Y. COMP. CODES R. & RECS. tit. 12, § 142-2.2.  Plaintiffs each assert that they never received overtime compensation during their employment.  (See Am. Compl. ¶¶ 31, 45; see also Tr. at 5:23-34, 12:2-3.)  They are therefore entitled to recover fifty percent of the applicable minimum wage for overtime hours worked during their employment.  See Jamarillo v. Banana King Rest. Corp., 12 CV 5649, 2014 WL 2993450, at *4 (E.D.N.Y. June 30, 2014).

Based on Zhang's testimony, she worked an average of thirty-two overtime hours per week. She is therefore entitled to $6,517.44 for the period from February 5, 2015 through December 30, 2015 ((32 x 4.38) x 46.5) and $4,032 for the period from December 31, 2015 through July 15, 2016 ((32 x 4.50) x 28), for a total of $10,549.44 in unpaid overtime compensation.

Based on Chan's testimony, he worked an average of twenty-nine overtime hours per week. He is therefore entitled to $5,969.94 for the period from February 5, 2015 through December 30, 2015 ((29 x 4.38) x 47) and $3,654 for the period from December 31, 2015 through July 15, 2016 ((29 x 4.50) x 28), for a total of $9,623.94 in unpaid overtime compensation.

### 4.   Spread of Hours

Plaintiffs also claim that they are entitled to unpaid spread of hours wages under N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6. (Am. Compl. ¶¶ 61-64.) That provision provides that "[o]n each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6. "Spread of hours" refers to "the length of the interval between the beginning and end of an employee's workday." Id. Restaurant employees are entitled to spread of hours wages regardless of their regular rate of pay. Feng Chen v. Patel, No. 16 CV 1130, 2019 WL 2763836, at *10 (S.D.N.Y. July 2, 2019); Calle v. Yoneles Enters., No. 16 CV 1008, 2017 WL 6942652, at *9 (E.D.N.Y. Oct. 24, 2017), report and recommendation adopted, 2018 WL 401629 (E.D.N.Y. Jan. 12, 2018).

Both plaintiffs testified that they worked more than ten hours per day, six days per week, throughout their employment. Accordingly, Zhang is entitled to $2,441.25 for the period

from February 5, 2015 through December 30, 2015 (($8.75 x 6) x 46.5) and $1,512 for the

period from December 31, 2015 through July 15, 2016 (($9.00 x 6) x 28), for a total of

$3,953.25 in unpaid spread of hours wages.  Chan is entitled to $2,467.50 for the period from

February 5, 2015 through December 30, 2015 (($8.75 x 6) x 47) and $1,512 (($9.00 x 6) x 28)

for the period from December 31, 2015 through July 15, 2016, for a total of $3,979.50 in unpaid

spread of hours wages.

     5.  <u>Liquidated Damages</u>

     Plaintiffs request liquidated damages under both the FLSA and the NYLL.  (Am.

Compl. at 2.)  The FLSA and NYLL each allow for liquidated damages awards equaling one

hundred percent of the wages due.  <u>See</u> 29 U.S.C. § 260; N.Y. Lab. Law N.Y. § 663(1).

However, plaintiffs cannot recover cumulative liquidated damages under both statutes for the

same time period.  <u>See</u> <u>Rana v. Islam</u>, 887 F.3d 118, 119 (2d Cir. 2018) (per curiam).  When

two forms of damages are available for the same violation, courts generally award the higher of

the two.  <u>Man Wei Shiu v. New Peking Taste Inc.</u>, No. 11 CV 1175, 2014 WL 652355, at *13

(E.D.N.Y. Feb. 19, 2014).  Here, plaintiffs can recover both pre-judgment interest and

liquidated damages under the NYLL.  <u>See</u> N.Y. LAB. LAW § 663.  Therefore, an award

recovered under the NYLL will be greater than one recovered under the FLSA.  In addition,

under the NYLL, "liquidated damages are presumed unless defendants can show subjective

good faith." <u>Zubair v. EnTech</u> <u>Eng'g, P.C.</u>, 900 F. Supp. 2d 355, 360 n.3 (S.D.N.Y. 2012); <u>see</u>

N.Y. LAB. LAW § 663(1).  As defendants have defaulted, they have not established good faith

to rebut the liquidated damages presumption.  Accordingly, I recommend that Zhang be

awarded $17,241.69 and Chan be awarded $25,617.69 in liquidated damages under the NYLL.[7]

      5. Wage Notices

Plaintiffs further request statutory damages for defendants' failure to provide

wage notices in compliance with New York's Wage Theft Prevention Act ("WTPA"), which

requires employers to "provide [their] employees, in writing . . . a notice containing . . . the rate

or rates of pay thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or

other . . ." N.Y. Lab. Law §195(1).  Beginning April 9, 2011, the WTPA required employers to

provide written wage notices "at the time of hiring, and on or before February first of each

subsequent year of the employee's employment with the employer." N.Y. Lab. Law §195(1-a)

(eff. Apr. 9, 2011 to Feb. 27, 2015).  By an amendment to the WTPA, effective February 27,

2015, that provision changed to require employers to provide written wage notices only "at the

time of hiring." 2014 N.Y. Laws ch. 537 § 1, amending N.Y. Lab. Law § 195(1-a).

Between April 9, 2011 and February 26, 2015, the WTPA entitled employees who

did not receive proper wage notices to statutory damages of $50 per week to a maximum of

$2,500.  See Miguel v. Mi Bella Puebla Corp., No. 16 CV 1593, 2017 WL 4838820, at *6

(E.D.N.Y. Sept. 6, 2017), report and recommendation adopted, 2017 WL 4838761 (E.D.N.Y.

Oct. 24, 2017).  Beginning on February 27, 2015, statutory damages under the WTPA were

increased to $50 per day to a maximum of $5,000.  Id. (citing N.Y. Lab. Law § 198(1-b)).

---

[7] For purposes of calculating liquidated damages, unpaid wages include unpaid spread of hours
pay.  See Romero v. Rung Charoen Sub, Inc., No. 16 CV 1239, 2017 WL 4480758, at *13
(E.D.N.Y. Sept. 30, 2017) (citing Cazarez v. Atl. Farm & Food Inc., No. 15 CV 2666, 2017 WL
3701687, at *8 (E.D.N.Y. May 31, 2017), report and recommendation adopted, 2017 WL
3701479 (E.D.N.Y. Aug. 25, 2017)).

At the inquest hearing, plaintiffs each testified that they did not receive a wage notice when they were hired.  (Tr. at 6:19-21; 12:8-10.)  Since plaintiffs worked more than one hundred days after February 26, 2015, they are entitled to $5,000 each for failure to provide a time of hire wage notice.  See Tan v. Voyage Express Inc., No. 15 CV 6202, 2017 WL 2334969, at *7 (E.D.N.Y. May 25, 2017).

      6.  Wage Statements

Plaintiffs also request statutory damages for defendants' failure to provide wage statements.  The WTPA requires employers to furnish each employee with a statement with every payment of wages—i.e., a paystub—that lists, inter alia, the dates of work covered by that payment of wages, the employer's address and telephone number, the applicable rate or rates of pay, applicable deductions, and any allowances claimed as part of the minimum wage.  N.Y. LAB. LAW § 195(3).  Both plaintiffs testified that they never received wage statements with their pay.  (Tr. at 6:22-23; 12:11-12.)

Prior to February 27, 2015, "the WTPA entitled employees to recover statutory damages for violations of the wage statement requirement of $100 per work week, not to exceed $2,500."  Baltierra v. Advantage Pest Control Co., No. 14 CV 5917, 2015 WL 5474093, at *10 (E.D.N.Y. Sept. 18, 2015) (citation omitted); accord Inclan v. N.Y. Hosp. Grp., 95 F. Supp. 3d 490, 501 (S.D.N.Y. 2015); see also 2010 N.Y. LAWS ch. 564 § 7, amending N.Y. LAB. LAW § 198(1-d).  By an amendment to the WTPA effective February 27, 2015, the law changed to allow employees to recover statutory damages of $250 dollars "for each work day that the violations occurred or continue to occur," not to exceed $5,000.  2014 N.Y. LAWS ch. 537 § 2, amending N.Y. LAB. LAW § 198(1-d); see also Zhang v. Red Mtn. Noodle House Inc., No. 15 CV 628, 2016 WL 4124304, at *6 n.13 (E.D.N.Y. July 5, 2016), report and recommendation adopted, 2016 WL 4099090 (E.D.N.Y. Aug. 2, 2016).  Because plaintiffs' employment after February 26,

2015 spans more than twenty days, they are each entitled to damages in the full statutory amount of $5,000 for the wage statement violations.

7.  Pre-Judgment Interest

Plaintiffs also request and are entitled to pre-judgment interest under the NYLL. See N.Y. Lab. Law § 663; Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015).  "Prejudgment interest is calculated on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law."[8] Id. at 49 (quoting Mejia v. East Manor USA Inc., No. 10 CV 4313, 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013) (internal brackets removed), report and recommendation adopted, 2013 WL 2152176 (E.D.N.Y. May 17, 2013)).

The statutory rate of interest is nine percent per annum.  N.Y. C.P.L.R. § 5004. Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date.  Id. § 5001(b).  The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest.  See Fermin, 93 F. Supp. 3d at 49; Wicaksono, 2011 WL 2022644, at *9.  I determine the midpoint of plaintiffs' employment to be October 26, 2015.  I therefore respectfully recommend that prejudgment interest at the rate of nine percent per annum be awarded on unpaid minimum and overtime wages and spread of hours wages from October 26, 2015 to the date of the entry of judgment, which amounts to a per diem interest rate of $4.25 for Zhang ($17,241.69 x .09/365) and $6.32 for Chan ($25,617.69 x .09/365).

---

[8] Prejudgment interest is also unavailable for violations of the wage statement or wage notice provisions.  See N.Y. Lab. Law § 198(1-b), (1-d).

8.  Post-Judgment Interest

Plaintiffs are also entitled to post-judgment interest under 28 U.S.C. § 1961(a).

Section 1961 provides that "interest shall be allowed on any money judgment in a civil case

recovered in a district court."  28 U.S.C. § 1961(a).  Under the statute, interest is calculated

"from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant

maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System,

for the calendar week preceding[ ] the date of the judgment."  Id.  Thus, I respectfully

recommend that plaintiffs be awarded statutory post-judgment interest.  See Fermin, 93 F. Supp

3d at 53 (finding that post-judgment interest is mandatory).

9.  Attorney's Fees and Costs

As the prevailing party, plaintiffs are entitled to recover reasonable attorney's fees

and costs under both statutes.  See 29 U.S.C. § 216(b), N.Y. LAB. LAW §§ 198, 663(1)).

Plaintiffs seek an award of attorney's fees in the amount of $13,785.  (See Pls.' Mem. at 15.)

District courts have "considerable discretion in determining what constitutes

reasonable attorney's fees in a given case."  Barfield v. New York City Health & Hosps. Corp.,

537 F.3d 132, 151 (2d Cir. 2008).  When exercising their discretion to determine the

reasonableness of attorney's fees, courts in this circuit use the "presumptively reasonable fee"

standard.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d

183, 190 (2d Cir. 2008).  The presumptively reasonable fee, also known as the lodestar, is "the

product of a reasonable hourly rate and the reasonable number of hours required by the case."

Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  In addition, an application

for attorney's fees must be supported "by accurate, detailed, and contemporaneous time records."

Labarbera v. ASTC Labs., Inc., 752 F. Supp. 2d 263, 277 (E.D.N.Y. 2010).

21

I begin by assessing whether plaintiffs request a reasonable hourly rate.  A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  Arbor Hill, 522 F.3d at 190.  Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation."  Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).  A judge may determine prevailing rates based on evidence presented or his or her own knowledge of rates charged in the community.  Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).  The "community" is generally considered to be the district where the court sits.  See Arbor Hill, 522 F.3d at 190.   Also, "the nature of representation and type of work involved in a case are critical ingredients in determining the 'reasonable' hourly rate."  Id. at 184 n.2 (citations omitted).

Plaintiffs in this case are represented by the law firm of Hang & Associates, PLLC, which requests hourly rates of $400 for principal attorney Jian Hang, $300 for associates Jiajing Fan and Xiaoxi Liu, and $150 for law clerk Zindzi Baugh Corbett.  (See Pls.' Mem. at 15; Affidavit of Jiajing Fan, Esq., dated Sept. 13, 2019 ("Fan Aff."), Dkt. No. 32, ¶ 27.)  In recent wage and hour cases in this district, Mr. Hang's work has been compensated at a rate of $350 per hour.  See Xi Qun Xu v. JNP Bus Serv. Inc., No. 16 CV 245, 2018 WL 1525799, at *10 (E.D.N.Y. Feb. 26, 2018) (collecting cases), report and recommendation adopted in relevant part, 2018 WL 1525662 (E.D.N.Y. Mar. 28, 2018); see also Lu Nan Fan v. Jenny & Richard's Inc., 17 CV 6963, 2019 WL 1549033, at *14 (E.D.N.Y. Feb. 22, 2019), report and recommendation adopted, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019).  As no information has been provided as to

the experience of the two associates who worked on this matter, Ms. Fan and Ms. Liu, I respectfully recommend that their work be compensated at a rate of $100 per hour.  See Lu Nan Fan, 2019 WL 1549033, at *14 (awarding $100 per hour for associates where no information was provided as to experience level); Xi Qun Xu, 2018 WL 1525799, at *10 (same).

I further find the rate requested for law clerk Zindzi Baugh Corbett to be too high. While, again, no information has been provided as to Ms. Baugh Corbett's experience, the court presumes that the title of "law clerk" indicates that Ms. Baugh Corbett was a law school graduate who was not admitted to the bar at the time she worked on this case.  "In this District, law clerks are typically awarded fees at the same hourly rate as legal paraprofessionals, or paralegals." LG Capital Funding, LLC v. 5Barz Int'l Inc., No. 16 CV 2752, 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019); see also Perez v. Pino Grocery Corp., 17 CV 2965, 2018 WL 4138935, at *9 (E.D.N.Y. Apr. 16, 2018) ("Law school graduates who have not yet been admitted to the bar have been awarded rates between $75 and $100 per hour."), report and recommendation adopted, 2018 WL 4119236 (E.D.N.Y. Aug. 29, 2018).  Accordingly, I respectfully recommend that Ms. Baugh Corbett's work be compensated at a rate of $90 per hour.

I next look to the reasonableness of the hours billed.  To determine the reasonableness of the hours spent on the litigation, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994)).  The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).  The court may exclude those hours that it finds

excessive, redundant, or otherwise unnecessary.  See Gordon v. Site 16/17 Dev., LLC, No. 11

CV 427, 2011 WL 3251520, at *6 (S.D.N.Y. July 28, 2011).  In lieu of an itemized reduction,

the court may make an across-the-board percentage reduction.  See Kirsch v. Fleet Street, Ltd.,

148 F.3d 149, 173 (2d Cir. 1998).

      Here, counsel requests compensation for a total of 45.7 hours of work,

representing 10.5 hours for Mr. Hang, 9.3 hours for Ms. Fan, 19.4 hours for Ms. Liu, and 6.5

hours for Ms. Baugh Corbett.  Having reviewed the billing records, I find this amount of time to

be reasonable.  In sum, I recommend that plaintiffs be awarded $7,130 in attorney's fees, as

follows:

| Name | Hourly Rate | Number of Hours | Total |
|---|---|---|---|
| Jian Hang | $350 | 10.5 | $3,675 |
| Jiajing Fan | $100 | 9.3 | $930 |
| Xiaoxi Liu | $100 | 19.4 | $1,940 |
| Zindzi Baugh Corbett | $90 | 6.5 | $585 |
| **Total** | | | $7,130 |

      Plaintiffs also request $638 in costs, representing $400 for this court's filing fee

and $238 in service of process fees.  (See Fan Aff. ¶ 31.)  While filing and service of process fees

are routinely recoverable in FLSA cases, counsel should not be reimbursed for instances of

defective service or for service upon defendants against whom plaintiffs did not prevail.  See Jiao

v. Kitaku Japanese Rest., Inc., 16 CV 2694, 2020 WL 2527588, at *17 (E.D.N.Y. Mar. 13,

2020), report and recommendation adopted, 2020 WL 2523109 (E.D.N.Y. May 18, 2020).

Accordingly, plaintiff may only recover for service of process on Ji.  While counsel has not

itemized the $238 requested in service of process fees, I will presume that service on Ji

24

accounted for one-third of that amount.  Therefore, I respectfully recommend that plaintiff be

awarded $479.33 in costs, comprising $400 for the filing fee and $79.33 for service on Ji.

       10. <u>Automatic Increase for Failure to Pay</u>

Pursuant to the NYLL:

> Any judgment or court order awarding remedies under this section
> shall provide that if any amounts remain unpaid upon the expiration of
> ninety days following issuance of judgment, or ninety days after
> expiration of the time to appeal and no appeal is then pending,
> whichever is later, the total amount of judgment shall automatically
> increase by fifteen percent.

N.Y. Lab. Law § 198(4).  In light of the court's award of damages against Ji, an order providing

for an automatic increase in accordance with § 198(4) is warranted.  Accordingly, if any amounts

remain unpaid ninety days after expiration of the time to appeal, and no appeal is then pending,

the total amount of the judgment shall automatically increase by fifteen percent.

## CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiffs' motion for

default judgment be granted as to Ji, but denied as to Xiang and Xifu.

In terms of damages, I respectfully recommend that Zhang be awarded

$44,483.38 consisting of $2,739 in unpaid minimum wage compensation, $10,549.44 in unpaid

overtime compensation, $3,953.25 in unpaid spread of hours wages, $17,241.69 in liquidated

damages, $5,000 in statutory damages for wage notice violations, and $5,000 in statutory

damages for wage statement violations, as well as pre-judgment interest accruing from October

26, 2015 to the date of entry of judgment and post-judgment interest.

I respectfully recommend that Chan be awarded $61,235.38, consisting of

$12,014.25 in unpaid minimum wage compensation, $9,623.94 in unpaid overtime

compensation, $3,979.50 in unpaid spread of hours wages, $25,617.69 in liquidated damages,

$5,000 in statutory damages for wage notice violations, and $5,000 in statutory damages for wage statement violations, as well as pre-judgment interest accruing from October 26, 2015 to the date of entry of judgment and post-judgment interest.

Finally, I respectfully recommend that plaintiffs be awarded $7,130 in attorney's fees and $479.33 in costs.

Any objections to this report and recommendation must be filed electronically within fourteen (14) days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       August 5, 2020